**KANSAS CITY, a Municipal Corporation, Appellant**

**v.**

**W.R. GRACE & CO., et al., Respondents.**

**No. WD 41083.**

Missouri Court of Appeals, Western District.

July 3, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1989.

Application to Transfer Denied Nov. 14, 1989.

Kenneth Blair McClain, II, Independence and Alan Runyan, Hampton, S.C., for appellant.

W.R. Grace & Co., pro se.

Spencer J. Brown, Kansas City, for U.S. Gypsum.

Robert J. Campbell, Overland Park, Kan., for Carey–Canada, Inc. and Celotex Corp.

William H. Sanders, Kansas City, for Fibreboard Corp.

Clifford Brooks Wood, Kansas City, for Keene Corp.

John H. Altergott, Jr., Kansas City, for Asbestospray Corp.

Robert Andrew Henderson, Kansas City, for Armstrong World Industries, Inc.

Frederick H. Riesmeyer, II, Kansas City, for ACandS, Inc.

Charles Seigel, St. Louis, for John L. May, Archbishop, amicus curiae.

Thomas A. Mickes, St. Louis, for Missouri Counsel of School Attys., amicus curiae.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

FENNER, Judge.

Appellant, the City of Kansas City, Missouri (Kansas City) appeals the orders of the trial court granting Respondents' Motions for Summary Judgment. The underlying cause of action is a civil suit brought by Kansas City alleging property damage at Kansas City International Airport (KCI) and Kansas City Downtown Airport (Downtown Airport). Kansas City alleges its damages are as a result of asbestos-containing acoustical, fireproofing and thermal insulation materials in its airport buildings.

In the underlying cause of action Kansas City settled with W.R. Grace & Co. and stipulated to the dismissal of certain other parties. The remaining parties, respondents herein, are as follows: Keene Corporation, United States Gypsum Company, Asbestospray Corporation, Fibreboard Corporation, Armstrong World Industries, Inc., ACandS, Inc., H & A Construction Corporation, Asbestos Product Manufacturing Corporation and The Celotex Corporation. The respondents are alleged to have been in the business of the design, manufacture and sale of building construction materials containing asbestos. The asbestos products of the respondents are alleged to have been placed in the Downtown Airport and KCI during construction. Construction of the Downtown Airport took place from 1958 to 1964 and construction of KCI occurred between 1969 and 1972.

Kansas City alleges that its airport buildings and their contents have been contaminated by asbestos fibers from the asbestos products of the respondents. Kansas City represents that when inhaled asbestos fibers cause numerous severe, disabling and fatal diseases including mesothelionia, an untreatable cancer of the pleural lining of the lungs and abdomen, as well as other cancers of the lungs, gastrointestinal cancer, laryngeal cancer, asbestosis, small airways disease and other diseases to the body, lungs, respiratory system and skin. Kansas City alleges that as a result of the asbestos contamination, it has been required to spend money for assessment and abatement of the asbestos containing materials, all to its damage in the sum of $20,000,000.

Kansas City alleges six theories of recovery against respondents as follows: negligence, strict tort liability, breach of implied warranty, breach of express warranty, fraud, and civil conspiracy.

Kansas City filed its suit on August 12, 1986, and discovery was undertaken on the issue of the statutes of limitations. On September 25, 1987, the respondents moved jointly and individually for summary judgment on the ground that the various applicable statutes of limitations had run. In addition, the respondents also moved for partial summary judgment on the ground that the claims arising from construction of KCI were barred by a release executed in settlement of a claim over alleged construction and design deficiencies at KCI. The respondents herein were not parties to the

release but claimed to have been covered by the terms of the release.

On August 18, 1988, the trial court entered summary judgment in favor of respondents based on the statutes of limitations and on the release.

## I. STATUTE OF LIMITATIONS

Kansas City alleges the trial court erred in entering summary judgment on the ground that the applicable statute of limitations had run on each count of its petition.

■ A party is entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c). Summary judgment is an extreme and drastic remedy and should be utilized with great care. *Commerce Bank of Fenton v. B.P.J. Enterprises*, 659 S.W.2d 615, 617 (Mo.App.1983). When issues of fact are present, statute of limitations issues must be submitted to the jury. *Hopkins v. Goose Creek Land Co., Inc.*, 673 S.W.2d 465, 469 (Mo.App.1984). In considering a motion for summary judgment, the court must scrutinize the record in a light most favorable to the non-moving party, and give that party the benefit of every doubt. *Eugene Alper Const. Co., Inc. v. Joe Garavelli's of West Port, Inc.*, 655 S.W.2d 132, 135 (Mo.App.1983). The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987). A genuine issue of fact exists when there is the slightest doubt about a fact. *Id.*

### A. NEGLIGENCE AND STRICT LIABILITY

Kansas City alleged in its Petition that respondents were negligent in formulating their products with asbestos which constituted a concealed defect and in failing to warn the City of the dangers of asbestos in their products. Kansas City's claim for strict tort liability was based on its allegation that respondents' products were defective and unreasonably dangerous.

The applicable statute of limitations for negligence and strict liability is § 516.120 [1] which allots five years from the accrual of the cause of action. A cause of action for negligence or strict liability accrues not "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment." § 516.100.

■ In order for a cause of action in tort for asbestos contamination to accrue, release of toxic asbestos fibers into the environment is necessary together with the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers. *School District of Independence v. U.S. Gypsum*, 750 S.W.2d 442, 457 (Mo.App.1988). Until such occurrences a party has no right to sue based upon asbestos contamination of the environment. "Where a party's right depends on the happening of an event in the future, the cause of action accrues, and the statute of limitations begins to run, only at the time the event happens ..." *De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Tel. Co.*, 539 S.W.2d 542, 546 (Mo.App.1976).

The record herein reflects that there are genuine issues of material fact as to when the City's causes of action for negligence and strict liability accrued.

The respondents represent that the record reflects the City's cause of action for negligence and strict liability accrued prior to August 11, 1981, which was more than five years before suit was filed. There are several matters in the record that the parties argue relate to the accrual of Kansas City's cause of actions for negligence and strict liability as well as the other causes plead. These matters are divided into the following categories: Concerns During KCI Construction, NESHAP Report, Terminal A—1975, NIOSH Report

1. All statutory references herein are to RSMo 1986.

1977, City Health Department, Scientific Knowledge, and Hygienetics Report 1985.

## CONCERNS DURING KCI CONSTRUCTION

■ Respondents argue that during the construction of KCI in 1972, Kansas City knew that a representative of the United States Department of Labor Occupational Safety and Health Administration (OSHA) recommended that a non-asbestos-containing material be substituted for the asbestos containing material being applied in the KCI terminal buildings. Respondents also point to the record reflecting that the construction engineers for KCI represented that the substituted non-asbestos-containing material would comply with OSHA regulations relating to exposure to asbestos dust. In this same vein respondents reference an article in the Kansas City Star on April 14, 1972, which discusses the concern that construction workers at KCI were possibly being unnecessarily exposed to asbestos dust.

These matters all relate to concerns over exposure of construction personnel working with asbestos. The concerns expressed during construction of KCI do not establish that the asbestos products once installed would be an environmental contaminant to the extent that the products would need to be removed as a health hazard or that Kansas City, or anyone else, possessed such knowledge during construction.

## NESHAPS REPORT

■ In granting respondents' Motion for Summary Judgment on Kansas City's claims for negligence and strict liability the trial court cited the regulations known as the National Emissions Standards for Hazardous Air Pollutants (NESHAPS) in support of its order. NESHAPS were promulgated and published by the Environmental Protection Agency (EPA) on April 6, 1973.[2] In pertinent part the NESHAPS regulations banned the use of spray-applied building materials containing more than 1% asbestos and required removal of such mate-

rials by methods which would prevent their release into the outside air whenever areas of greater than 160 square feet or 260 linear feet, which contain such materials, are renovated or demolished.

The trial court held that Kansas City had knowledge of the NESHAPS Regulations citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) and *United States v. Markgraf,* 736 F.2d 1179, 1185 (7th Cir.1984). These cases stand for the proposition that everyone is charged with notice of the contents of federal statutes and regulations. However, simply because Kansas City had notice of NESHAPS, its causes of action for negligence and strict liability were not caused to accrue until asbestos fibers were released into the environment of the airport buildings and Kansas City was capable of ascertaining that there was a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers. *School District of Independence v. U.S. Gypsum,* 750 S.W.2d at 457.

NESHAPS did not require that asbestos containing products be removed from buildings or declare that in an undisturbed state there was or could be a hazard from the products. NESHAPS is limited to situations where asbestos products were disturbed by renovation or demolition. NESHAPS did not cause Kansas City's causes of action for negligence and strict liability to accrue.

## TERMINAL A—1975

■ Respondents argue that in April of 1975 Kansas City was aware that asbestos was falling from coated beams in the bag rooms and maintenance shops in Terminal A at KCI and therefore Kansas City had knowledge at that time of flaking and release of asbestos fibers at KCI. However, an OSHA report on this particular problem reflects that the concentration of asbestos fibers did not exceed the limits permissible under federal guidelines. This information shows that Kansas City was aware of problems with asbestos material adhering to beams to which it had been applied but, as

2. 42 U.S.C. §§ 7401, 7412; 40 C.F.R. 61.01 *et seq.*

substantiated by the OSHA report, it does not show that Kansas City had knowledge of a substantial and unreasonable risk of harm by virtue of environmental contamination.

## McCRONE REPORT 1976

■ Respondents point to a test conducted by Walter C. McCrone Associates, Inc., of the fireproofing in Terminals B and C at KCI in 1976. The McCrone report confirmed that there was asbestos present in the fireproofing in Terminals B and C. However, this report establishes nothing other than the fact that asbestos was present which does not in itself cause accrual of Kansas City's cause of action.

## NIOSH REPORT 1977

■ In 1977 the National Institute of Occupational Safety and Health (NIOSH) conducted a health hazard evaluation of Terminal B at KCI. Respondents maintain the NIOSH report demonstrates Kansas City's knowledge of asbestos-containing material at KCI and the potential health hazard these 'materials presented. The NIOSH report reflected that there was a potential exposure of employees to airborne asbestos but that operations evaluated did not pose or indicate an immediate hazard to asbestos. The report stated that an immediate problem does not exist but plans should be made to replace or seal surfaces as part of regular building maintenance. There is some question in the record as to whether or not Kansas City received a copy of the NIOSH report. However, even if Kansas City did receive a copy of the report it does not establish that Kansas City suffered environmental contamination at KCI in 1977 which contamination and the substantial and unreasonable risk of harm relating thereto were capable of ascertainment at that time.

## CITY HEALTH DEPARTMENT

■ Respondents represent that Thomas Myslinski, manager of the Environmental Hazards Section of Kansas City Public Health Department believed by August, 1980 that asbestos-containing products posed a serious health problem for building occupants, especially smokers, and that certain individuals advocated the removal of all asbestos from all buildings. Respondents argue that the City Health Department was advised by the Director of the NIOSH office in Kansas City that asbestos-containing insulation in buildings should be removed in some circumstances. Myslinski's testimony conflicts with other evidence in the record and does not establish, by itself, that asbestos fibers had contaminated the environment at KCI or the Downtown Airport or that Kansas City was capable of ascertaining that there was a substantial and unreasonable risk of harm from asbestos contamination prior to 1981.

## SCIENTIFIC KNOWLEDGE

■ There are issues of fact presented in the record as to when it was scientifically established that exposure to asbestos fibers, to any degree, presented a substantial and unreasonable risk of harm. Taken in the light most favorable to Kansas City the record reflects that in the 1970's public health officials believed there was a safe lower threshold level of exposure to asbestos. The record before the trial court in the case at bar reflects that it was not until 1983 that the Occupational Safety and Health Administration (OSHA) unequivocally reported "that there was no level of exposure to asbestos below which clinical effects did not occur." Even then the record here reflects that there were those in the asbestos industry who took issue with OSHA on this point. Therefore, there are genuine issues of material fact as to when Kansas City was able to ascertain the hazard relating to the release of toxic asbestos fibers into the environment of their airport buildings.

## HYGIENETICS REPORT 1985

In 1985, following discussions between the City's Health Department and the Environmental Protection Agency, Kansas City retained Hygienetics, Inc., to conduct an asbestos inspection and hazard assessment at KCI. The report concluded among other things that hazardous levels of airborne

asbestos do not exist in any of the buildings. The report did recommend that asbestos materials should slowly and carefully be removed and replaced to allow renovation and maintenance activities to be performed without concern for asbestos hazards. The report also stated that the asbestos removal would eliminate any concerns that the natural asbestos fiber fallout rates might increase.

The record reflects that there are genuine issues of material fact as to when asbestos fibers were released into the environment of Kansas City's airport buildings and when Kansas City was capable of ascertaining a substantial and unreasonable risk of harm from the release. Therefore, Kansas City's causes of action for negligence and strict liability were not subject to summary judgment in favor of the respondents.

## B. BREACH OF IMPLIED WARRANTY

■ Kansas City alleged in its Petition that respondents impliedly warranted that their asbestos products were of good and merchantable quality, fit for their intended purpose.

Kansas City's claim for breach of implied warranty was alleged, to apply to all of its airport buildings at KCI and the Downtown Airport. However, on appeal Kansas City only challenges the summary judgment granted by the trial court based upon the expiration of the statute of limitations, on its claim for breach of implied warranty against respondent U.S. Gypsum in regard to its asbestos containing products at the Downtown Airport.

The asbestos containing products at the Downtown Airport were purchased prior to 1965. For transactions entered into prior to 1965, the applicable statute of limitations for breach of warranty is § 516.120. § 400.10–101; See also § 400.2–725 V.A. M.S., Code Comment 1 and 2. As discussed under A. Negligence and Strict Liability, in this opinion, § 516.120 allots five years from accrual of the cause of action to bring suit. Causes of action under § 516.120 are not deemed to accrue until

the damage resulting therefrom is sustained and capable of ascertainment. § 516.100.

Respondents argue that since Kansas City knew of the damage from asbestos at KCI they were likewise capable of ascertaining the damage at the Downtown Airport. A reiteration of the facts relating to Kansas City's knowledge of asbestos contamination and any health hazard presented thereby at KCI is not necessary. It suffices to say that for the reasons stated in this opinion under A. Negligence and Strict Liability, there are likewise genuine issues of material fact as to when the City's cause of action for breach of implied warranty accrued in reference to the Downtown Airport.

## C. BREACH OF EXPRESS WARRANTY

Kansas City alleged breach of express warranties of future performance by alleging representations by all respondents "that their products were safe, suitable for use, fully tested, and easy to maintain" and by alleging that "said representations extended to future performance."

Kansas City's claim for breach of express warranty was alleged, in its petition, to apply to all of its buildings at KCI and the Downtown Airport. On appeal Kansas City only challenges the judgment of the trial court on its claim for breach of express warranty at KCI. The trial court held that the allegations of Kansas City's petition were inadequate to plead a warranty of future performance and even assuming a breach of warranty of future performance had been properly plead it was nonetheless barred by the statute of limitations.

Even though the trial court stated in the portion of its order discussing the parties legal arguments that the allegations of Kansas City's petition were inadequate to plead a warranty of future performance the order itself was entitled "Order Granting Defendants' Motion For Summary Judgment–Statute of Limitations" and after discussing the parties' legal arguments in its order the trial court held that "For

the foregoing reasons, all counts of the Third Amended Petition are time barred by the applicable statute of limitations and defendants are entitled to summary judgment in their favor."

■■■■■ A breach of warranty of future performance must be expressly pleaded. *Wilbur Waggoner Equipment v. Clark Equipment*, 668 S.W.2d 601, 602 (Mo.App. 1984). However, the question of whether or not the allegations of the petition herein were specific enough to maintain a claim for breach of warranty of future performance need not be addressed because not only did the trial court expressly grant relief in the form of summary judgment, there were also matters outside the pleadings which were presented to and not excluded by the court. Consideration of such matters outside the record causes what might otherwise be a motion to dismiss to be treated as a motion for summary judgment. Rule 55.27(b). *Black Leaf Products Co. v. Chemisco, Inc.*, 678 S.W.2d 827, 829 (Mo.App.1984). In considering a motion for summary judgment the court must consider documents in the record which could be used at trial. *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 116 (Mo.App. 1986).

■■■■ In considering Kansas City's claim for breach of express warranty for future performance, on the basis of the court's grant of summary judgment, the representations of Keene Corporation and Asbestospray, made at the time of construction, were before the court. Asbestospray represented that its product "was easy to maintain" and that it "provides a permanent surface that will not crack, dust or flake." Keene Corporation represented that test data for their product, Pyrospray, was available "indicating the resistance to air erosion and nondusting properties of the mineral fiber coating ... assuring the safety of the application ..."

On the record herein Kansas City established a genuine issue of material fact in regard to its claim for breach of express warranty for future performance against Asbestospray and Keene Corporation. Therefore it must be determined if the claims were barred by the applicable statute of limitations.

■■■ The asbestos-containing products at KCI were purchased after 1965. The statute of limitations for breach of warranty, for products purchased after 1965, is § 400.2–725, which requires that the cause of action must be commenced within four years after the cause of action accrues. § 400.2–725 also provides that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty is stated to occur when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered. § 400.2–725(2).

Kansas City was aware of dusting; flaking and maintenance problems with the asbestos products at KCI by virtue of the problems encountered in Terminal A in 1975 and the NIOSH Report of 1977, both of which subjects are discussed under A. Negligence and Strict Liability in this opinion.

■■■ In regard to the representations of Asbestospray that its product was "easy to maintain" and that it "provides a permanent surface that will not crack, dust or flake," the record reflects Kansas City had sustained damage from maintenance problems and that there was cracking, dusting and flaking of the products which was capable of ascertainment prior to 1981. Asbestospray did not represent its product to be safe or free of health hazards. Therefore, Kansas City's claim for breach of express warranty for future performance against Asbestospray is barred by the four year statute of limitation of § 400.2–725.

■■■ In regard to the representations of Keene Corporation there is a genuine issue of material fact as to whether or not the representation of the safety of its asbestos product, installed at KCI, was capable of ascertainment prior to 1981. Therefore, Kansas City's claim for breach of express

warranty for future performance against Keene Corporation was not subject to summary judgment.

There is no evidence in the record in relation to express warranties of any of the parties respondent other than Keene Corporation and Asbestospray. Therefore, the issues of fact presented in Kansas City's petition, as to these other parties, remain in dispute and are not subject to summary judgment. The burden is on the respondents to demonstrate that there is no genuine issue of fact and summary judgment should not be granted where the record fails to resolve a material issue raised by the pleadings. *Gast v. Ebert*, 739 S.W.2d 545, 547 (Mo. banc 1987).

### D. FRAUD

■ The statute of limitations for a cause of action for fraud is five years and the cause of action is "deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting fraud." § 516.120(5). This rule is interpreted to mean that when facts constituting fraud are not discovered within the prescribed ten years, the cause of action is deemed to accrue at the termination of this ten-year period and a plaintiff has an additional five years from the end of the ten year period to bring his action. *Anderson v. Dyer*, 456 S.W.2d 808, 811–12 (Mo.App.1970). If a party takes affirmative action to conceal the fraud, the statute is tolled until the fraud is discovered. *Obermeyer v. Kirshner*, 225 Mo.App. 734, 38 S.W.2d 510, 514 (1931).

The elements of a submissible case of fraudulent misrepresentation are:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the statement;

(5) the hearer's reliance on its truth, and the right to rely thereon; and

(6) proximate injury.

*Gast v. Ebert*, 739 S.W.2d at 547.

■ Kansas City properly plead the elements of fraudulent misrepresentation. Kansas City alleged that respondents made false material representations that their products had been fully tested, that they were safe, that they were suitable for use in public buildings, that they would normally last for the life of the building and that very little or no maintenance would be required to keep the products in suitable condition.[3]

■ For the reasons discussed in this opinion under A. Negligence and Strict Liability there are genuine issues of material fact as to when Kansas City discovered the fraud alleged. Likewise there are also genuine issues of material fact presented in the record as to whether respondents attempted to conceal the fraud alleged. Therefore, the respondents are not entitled to summary judgment on Kansas City's claim for fraud.

### E. CIVIL CONSPIRACY

■ A conspiracy cause of action is governed by the five year statute of limitations of § 516.120. *Rippe v. Sutter*, 292 S.W.2d 86, 90 (Mo.1956). The five year limitation period in a conspiracy action begins to run upon the occurrence of the last overt act charged resulting in damage to the plaintiff. *Id.* "When the act which gives the cause of action is not legally injurious until certain consequences occur then the period of limitation will date from the consequential injury ... and ... the resulting damage is sustained and is capable of ascertainment within the contemplation of the statute [516.100][4] whenever it is

---

3. The issue as phrased here raises a question as to what constitutes safety and suitability for use in public buildings. This is a different question than that raised in Kansas City's claim for breach of express warranty against Asbestospray where Asbestospray's express warranty did not speak to the safety or suitability for use in public buildings in regard to their product but only represented that the product was easy to maintain and would not crack, dust or flake.

4. 516.100 provides in part that for purposes of applying the provisions of 516.120 the cause of action shall not be deemed to accrue when the

such that it can be discovered or made known." *Id.*

█ The conspiracy alleged was not legally injurious until Kansas City suffered contamination by asbestos fibers being released into the environment of its airport buildings and had the ability to ascertain any health hazard relating to the toxicity of the fibers. As discussed previously herein taken in the light most favorable to Kansas City and giving them the benefit of every doubt, the record establishes genuine issues of fact as to when this damage was sustained and capable of ascertainment.

## II. RELEASE

█ Separate from its order granting summary judgment in favor of respondents the trial court also entered an order granting respondents Motion for Partial Summary Judgment on the basis of a certain release that Kansas City had executed.[5] The release in question was executed in settlement of a lawsuit, filed by Kansas City on May 8, 1974, against Del E. Webb Corporation (Webb) and Burns & McDonnell Engineering Company, Inc., (Burns & McDonnell) over alleged deficiencies in the design, material and construction of airport buildings at KCI. (This lawsuit over deficiencies at KCI will hereinafter be referred to as Case No. 779,459). Case No. 779,459 was based upon a general construction contract, known as Contract 7.1, between Kansas City and Webb and an Engineering Contract between Kansas City and Burns & McDonnell all relating to the design and construction of the three terminal buildings at KCI.

On August 7, 1979, Kansas City, Webb and Burns & McDonnell executed a release settling Case No. 779,459. Prior to settlement of the lawsuit numerous suppliers, subcontractors and design professionals were joined as third and fourth party defendants.

On appeal herein Kansas City argues that the trial court erred in entering partial Summary Judgment because asbestos contamination claims were not included in the release in that these claims had not yet accrued and were not related to the claims of the prior lawsuit.

The language of the release relevant herein is as follows:

The City ... forever *releases* and discharges ... *all* subcontractors, *suppliers,* engineers, architects, consultants and designers who performed work or services or supplied materials covered by Contract 7.1 or the Engineering Contract *from* any and *all* liability, actions, at law or equity, penalties, *claims*, demands, or suits whatever, that *the City ever had or now has based on, arising out of, relating to, or connected with Contract 7.1* or the Engineering Contract or performance of either contract, including any and all claims for negligence or breach of contract or breach of express or implied warranty and including all consequences that may hereafter develop as well as those already developed; and also forever *releases* and discharges *Webb and Burns & McDonnell together with* their servants, agents, employees, representatives, predecessors in interest, subsidiaries, affiliates, partners, joint venturers, successors and assigns, and all subcontractors, *suppliers,* engineers, architects, consultants, and designers who performed work or services or supplied materials covered by Contract 7.1 or the Engineering Contract from any and all liability, actions at law or equity, penalties, *claims*, demands or suits whatever that the *City ever had, how has, or shall or may have* based on, *arising out of, relating to or connected with the deficiencies alleged in* paragraph 6 of the First Amended Petition in *Case No. 779,459*, including any and all claims for negligence or breach of contract or breach of express or implied warranty *and including all consequences that may hereaf-*

---

wrong is done or the technical breach of duty occurs but when the damage therefrom is sustained and capable of ascertainment.

**5.** Summary judgment was partial on the release because the release only related to Kansas City's claims in regard to KCI and did not relate to the claims that referenced the Downtown Airport.

*ter develop* as well as those already developed, EXCEPT, however, that the City reserves and retains any and all claims, rights, or causes of action it may have against any person or entity based on or arising out of any cracking, breakage or discoloration of the windows in the terminal buildings, PROVIDED, that the City covenants and agrees it will never institute, prosecute, or in any way aid in the institution or prosecution of any action at law or equity, claim or demand against Burns & McDonnell, its servants, agents, employees, representatives, predecessors in interest, subsidiaries, affiliates, partners, joint venturers, successors, and assigns, or any engineers, architects, consultants, or designers who performed work or services under the Engineering Contract that the City now has or shall or may have based on or arising out of any cracking, breakage, or discoloration of the windows in the terminal buildings; [emphasis added].

The release discharges Webb and Burns & McDonnell from all past, present and future claims with respect to the deficiencies alleged in Case No. 779,459. The suppliers of materials for the construction of the terminals at KCI were also released from past and present claims for supplied materials covered by Contract 7.1. The release omits future claims from the portion of the agreement which releases claims not asserted in Case No. 779,459. There were no claims asserted in Case No. 779,459 for asbestos contamination at KCI.

For the reasons as stated previously in this opinion under A. Negligence and Strict Liability, B. Breach of Implied Warranty, C. Breach of Express Warranty, D. Fraud and E. Civil Conspiracy, Kansas City's claim had not accrued on August 7, 1979, except for the claim for breach of express warranty against Asbestospray which as discussed previously had accrued prior to 1979. The release did not bar future claims against suppliers of materials and therefore the trial court erred by granting partial summary judgment on behalf of respondents based on the terms of the release except for Kansas City's claim for breach of express warranty against Asbestospray.

The trial court's order granting summary judgment in favor of respondents on Kansas City's claims for negligence, strict liability, fraud, and civil conspiracy, is reversed and said causes are reinstated. The trial court's order granting summary judgment in favor of respondents on Kansas City's claim for breach of implied warranty is affirmed except for Kansas City's claim for breach of implied warranty against respondent U.S. Gypsum in regard to its asbestos products at the Downtown Airport, which cause is reinstated. The trial court's order granting summary judgment in favor of respondents on Kansas City's claim for breach of express warranty is reversed and said cause is reinstated except as to respondent Asbestospray. The trial court's order granting summary judgment in favor of respondent Asbestospray on Kansas City's claim for breach of express warranty is affirmed.

All concur.