Julia CULLOM, et al., Appellants,

v.

CRITTENTON, Respondent.

No. WD 53895.

Missouri Court of Appeals,
Western District.

Submitted Dec. 4, 1997.

Decided Jan. 13, 1998.

Catherine Ann Donnelly, Kansas City, for appellants.

Thomas W. Wagstaff, Kansas City, for respondent.

Before ULRICH, C.J., P.J., SMART, J., and TURNAGE, Senior Judge.

PER CURIAM.

Julia Cullom gave birth to John Creighton on March 5, 1964, while she was staying at Crittenton,[1] an organization providing care for young women which at that time included a maternity hospital in its operations. She and her biological son, Mr. Creighton, filed suit against Crittenton on January 29, 1996, based upon Ms. Cullom's allegations that Crittenton had wrongfully and fraudulently caused John Creighton to be adopted without Ms. Cullom's consent. Crittenton filed a motion for summary judgment contending that the petition failed to state a claim against it and that the statute of limitations on the action had run. The trial court granted Crittenton's motion. Ms. Cullom and Mr. Creighton appeal the trial court's grant of summary judgment to Crittenton. The appellants claim that the trial court erred in entering summary judgment against them because, absent any evidence that they could have discovered their claims of fraud any

sooner, the statute of limitations was tolled. The judgment of the trial court is affirmed.

In the spring of 1963, Julia Cullom became pregnant. Ms. Cullom was not married at the time she became pregnant. Doug Mellor, the father of the child, and Ms. Cullom hitchhiked to San Francisco. In September 1963, Mr. Mellor left San Francisco. Ms. Cullom has had no contact with him since that time. Ms. Cullom left San Francisco and, in January 1964, entered the Florence Crittenton Home in Kansas City. On March 5, 1964, Ms. Cullom gave birth to John Creighton.

Immediately following the delivery of the baby, a social worker told the doctor that the baby had been placed for adoption. Ms. Cullom denies that she ever gave permission for the adoption. She claims that agents of Crittenton forged her signature on an adoption consent form. In her deposition, Ms. Cullom claimed that two social workers attempted to get her signature on an adoption consent form but that she refused to sign. She alleges that the social workers told her that it would be abusive for her to keep the child. Ms. Cullom remained at Crittenton for ten days following the birth and then returned to her parent's home in Joplin, Missouri. One or two weeks after her discharge, Ms. Cullom returned to Crittenton to inquire about the baby. She was told by the director of Crittenton that the adoption was legal. Inquiry of the juvenile court in Kansas City, Missouri, also yielded the information that the adoption was legal. Ms. Cullom took no further action at that time.

Shortly after his birth, John Creighton was adopted by Wilma and Harlan Creighton. Mr. Creighton had a strong interest in learning the identities of his natural parents. In late 1991 or early 1992 he learned that Julia Cullom was his natural mother. A private investigator sold Ms. Cullom's name to Mr. Creighton. Mr. Creighton telephoned Ms. Cullom on February 20, 1992. During that conversation, Ms. Cullom told Mr. Creighton that she had not intended to give him up for adoption. In September 1994, when the

1. Apparently, the precise name of the not-for-profit respondent corporation is "Crittenton." The parties refer to it at different times as "The Crittenton Center" and the "Florence Crittenton Home."

adoption records were unsealed, Ms. Cullom inspected the adoption consent form from 1964. She concluded that her signature had been forged on the document.

On January 29, 1996, nearly 32 years after the birth, Julia Cullom and John Creighton filed suit against Crittenton alleging fraud, interference with family relationship, outrageous conduct, and intentional infliction of emotional distress. Crittenton filed a motion for summary judgment claiming that these claims were time-barred by the statute of limitations. Crittenton also claimed that the petition failed to state a claim against it. On January 22, 1997, the trial court granted Crittenton's motion for summary judgment. Julia Cullom and John Creighton appeal.

■■■ An appellate court's review of a summary judgment is fundamentally a *de novo* review. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). This court views the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party moving for summary judgment carries the burden of establishing that it is entitled to judgment as a matter of law. *Id.* at 382. Evidence in the record presenting a genuine issue of material fact defeats a movant's right to summary judgment. *Id.* A genuine issue "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. The dispute must not be simply argumentative, frivolous or imaginary. *Id.* at 382. If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, it will not be set aside on appeal. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995). Summary judgment has been held to be suitable for adjudicating statute of limitations issues and other affirmative defenses. *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990). Statute of limitations issues must be presented to a jury where issues of

fact exist. *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 268 (Mo.App.1989).

## STATUTES OF LIMITATION

Ms. Cullom and Mr. Creighton claim that the trial court erred in granting summary judgment to Crittenton because the statute of limitations had not run on their claims. Appellants contend that the statute of limitations was tolled until they could have discovered their cause of action and that the earliest possible date that their claims ripened and that the fraud was discoverable was when the adoption records were unsealed in 1994. This is when, they allege, Ms. Cullom discovered that the consent to adoption was forged. Thus, appellants reason, the petition filed on January 29, 1996, is not barred by any limitations period.

■■■ Crittenton's position is that the statute of limitations on this action ran long ago and that the action is time-barred by any and all of the statutes of limitations that may be applicable in this case. Initially, Crittenton claims that this action is fundamentally a medical malpractice action and that the two-year statute of limitations set forth in § 516.105, RSMo 1994 [2] is applicable. Crittenton argues that Missouri law is clear that all actions against health care providers are fundamentally actions for medical malpractice and that plaintiffs cannot avoid the two-year statute of limitations by artful pleading. In support of its position, Crittenton cites *Mullins v. Miller*, 796 S.W.2d 119 (Mo.App. 1990), *overruled on other grounds by Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503 (Mo. banc 1991). In *Mullins* the plaintiff sued her dentist for failing to supply her with a properly fitting pair of dentures. The plaintiff brought her claim in the guise of a contract action. The court found that an action that is based upon the failure to provide appropriate health care is a tort action for malpractice. 796 S.W.2d at 120. Crittenton also cites *Jacobs v. Wolff*, 829 S.W.2d 470 (Mo.App.1992) and *St. John's Regional Health Center v. Windler*, 847 S.W.2d 168 (Mo.App.1993) as precedent. However,

---

**2.** All statutory references hereafter are to the Missouri Revised Statutes of 1994 unless otherwise indicated.

these cases look at whether a plaintiff's claim for damages consists of claims against the health care provider in its capacity as a health care provider. Similarly, in *Newland v. Azan,* 957 S.W.2d 377, 378 (Mo.App.W.D. 1997), this court recently held that a petition alleging a dentist's sexual assault against a patient did not present a proper malpractice claim. In *Newland,* a patient filed a claim against her dentist alleging that he had sexually assaulted her after giving her several painkiller shots. The dentist filed a motion for partial summary judgment on the theory that the patient did not allege facts that would show that he committed professional negligence in assaulting his patient. *Id.* at 378. Because the patient did not allege that the actual dental services performed were improperly done, the patient failed to show that her dentist's conduct fell below the standard of care for a dentist. *Id.* at 379. Just as a dentist's sexual assault on a patient is unrelated to dental services that the doctor provides, the claims in appellants' petition, do not, strictly speaking, state a claim against Crittenton in its capacity as health care provider. The gravamen of the claims is not related to any medical services provided Ms. Cullom or to Mr. Creighton at Crittenton. Instead, the petition focuses on the alleged wrongful actions by Crittenton in falsifying the consent for adoption. Because the petition does not state a claim against Crittenton as a health care provider, the statute of limitations for medical malpractice actions is not applicable in this case.

The applicable statute of limitations, § 516.120, RSMo 1994, nevertheless bars this action. Section 516.120 provides:

Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;

(2) An action upon a liability created by a statute other than a penalty or forfeiture;

(3) An action for trespass on real estate;

(4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

Crittenton contends that § 516.120(4) is applicable to the claims in appellants' petition other than fraud (interference with family relationship, outrageous conduct and intentional infliction of emotional distress) and that § 516.120(5) is applicable to the appellants' claim for fraud. It is Crittenton's position that the statute of limitations ran on the other tort claims in 1969 and that the statute of limitations on the allegation of fraud ran, at the very latest, in 1979. The appellants, on the other hand, claim that the fraud was concealed from them and could not have been discovered until the adoption records were unsealed in 1994. Their petition was filed in January 1996, within two years of the discovery and thus, they claim, is well within the statute.

Section 516.120(5) governs actions for fraud. *Klemme v. Best,* 941 S.W.2d 493, 497 (Mo. banc 1997). The statute "begins to run when damage is sustained and objectively capable of ascertainment." *Id.* Section 516.100. *Klemme* holds that damage is capable of ascertainment where the damage could have been discovered by or made known to a plaintiff and not when the plaintiff actually discovers the injury or the wrongful acts. 941 S.W.2d at 497. The statute begins to run when the fact of damage is ascertainable, even if the exact amount of damage cannot be verified or if some additional damage may arise at a future time. *Jordan v. Willens,* 937 S.W.2d 291, 294 (Mo.App.1996).

Furthermore, the statute of limitations pertaining to actions for fraud has been interpreted as meaning "that when facts constituting the fraud are not discovered within the prescribed ten years, the cause of action is deemed to accrue at the termination of this ten-year period and a plaintiff has an addi-

tional five years from the end of the ten year period to bring his action." *W.R. Grace*, 778 S.W.2d at 273. The statute is tolled, however, where a party takes affirmative action to conceal the fraud and the statute only begins to run when the fraud is discovered. *Id.*

■■■■■ Even under the most generous construction of the statute, the appellants are time-barred from bringing suit against Crittenton. There is no genuine issue of material fact concerning relevant dates. Ms. Cullom's damages were capable of ascertainment at the time the baby was given up for adoption in 1964. The statute ran on her claim in 1969. By her own account, Ms. Cullom states that she did not wish to give her baby up for adoption and did not sign a consent for adoption when she was asked to do so. As an explanation for her failure to bring an action at that time, she contends only that she was told that the adoption was legal. Ms. Cullom clearly had notice that the adoption was faulty because she knew she had not consented. She took no action. She asserts that she could not have ethically sued Crittenton at that point because, without access to the records, she did not know the identity of the actual wrongdoer. We disagree. She claims Crittenton took the baby and refused to return the baby. If the facts were as she stated, she would have been entirely justified to sue Crittenton at that time. It is expected that a plaintiff act with due diligence. *Schwartz*, 797 S.W.2d at 832. "Where the means for discovery exist, a plaintiff is deemed to know of the fraud, so that the period of limitations commences to run then." *Id.* Ms. Cullom could have sued Crittenton for withholding her child. Her testimony that she did not consent to the removal of the baby would have created a prima facie case. The burden would have shifted to Crittenton to justify its actions with regard to the baby. Ms. Cullom's failure to act is not excusable for purposes of the statute of limitations.

■■■■■ Mr. Creighton's claim is also barred by the statute of limitations. Mr. Creighton was born on March 5, 1964. In his deposition, he states that he knew that he was always interested in finding his natural parents. He reached his majority on March 5, 1985. Although the appellants claim that it

was only after Mr. Creighton attained his majority and learned to petition the court, that the records could be opened, they offer no explanation as to the reason Mr. Creighton waited nine years after he reached his majority to inspect the adoption records. Section 453.121 provides a mechanism whereby an adopted adult can petition the court to inspect his or her adoption records. Even before the enactment of § 453.121, procedures existed for the examination of adoption records. *See Application of Maples*, 563 S.W.2d 760 (Mo. banc 1978).

■■■■■ Appellants allege no facts that would support the theory that the statute was tolled because of some affirmative action on the part of Crittenton to conceal the fraud. *See W.R. Grace*, 778 S.W.2d at 273. In any event, the action is time-barred for another reason. The Eastern District of this court has addressed the question of the maximum time period to bring an action under the authority of § 516.120(5). In *Gilmore v. Chicago Title Ins. Co.*, 926 S.W.2d 695, 699 (Mo.App.1996), the court stated:

> Section 516.280, which acts to toll the statute of limitations when a party's cause of action has been fraudulently concealed, was enacted well before the discovery period for § 516.120(5) was limited to a ten year period. The General Assembly was aware of § 516.280 when it amended § 516.120(5), adding the ten year limit. Knowing that § 516.280 tolled applicable statutes of limitations indefinitely, the legislature chose to limit the statute of limitations for fraud to a fifteen year maximum. We believe the General Assembly intended that the statute be tolled for only a limited amount of time. We have also concluded the legislature intended to word "discovery," as used in § 516.120(5), means actual or constructive knowledge of the fraud. For these reasons, we hold fraudulent concealment does not toll the statute of limitations for fraud beyond what is provided for in § 516.120(5) and does not require actual discovery of the fraud before the statute begins to run.

(Citations omitted).

This case illustrates the policy underlying statutes of limitation. Mr. Creighton was

born on March 5, 1964. Ms. Cullom's memory of the events surrounding the birth is vague. She remembers no names or exact dates. She does not remember contents of conversations. Crittenton has not operated a maternity hospital since 1973. Enforcing the statute of limitations in this case serves the important policy of precluding claims that cannot, due to the passage of time, be investigated properly as to their validity, *see Wheeler v. Missouri Pac. R. Co.*, 328 Mo. 888, 42 S.W.2d 579, 583–84 (1931), and precluding claims which the defendant could have no reasonable opportunity to defend, *Baron v. Kurn*, 349 Mo. 1202, 164 S.W.2d 310, 317 (1942). The trial court did not err in ruling that the applicable statute of limitations bars this action.

The judgment of the trial court is affirmed.

---

Before CRANE, P.J., and RHODES RUSSELL and JAMES R. DOWD, JJ.