758 F.2d 266
 40 UCC Rep.Serv. 1283, 17 Fed. R. Evid. Serv. 999
 R.W. MURRAY, COMPANY, The Citadel, Ltd., Robert Kresko,
Harlan R. Crow, George A. Shutt, Appellees/Cross-Appellants,
v.
SHATTERPROOF GLASS CORPORATION, Appellant/Cross-Appellee.
 Nos. 83-2580, 83-2651.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1984.
Decided March 22, 1985.
 
 Robert S. Allen, St. Louis, Mo., for appellant/cross-appellee.
 W. Stanley Walch, St. Louis, Mo., for appellees/cross-appellants.
 Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.
 ROSS, Circuit Judge.
 
 
 1
 Shatterproof Glass Corporation (Shatterproof) appeals from a judgment entered on a jury verdict finding it liable for breach of an express warranty in connection with a sale of goods. Shatterproof alleges that the damage award was excessive, that the plaintiffs' claims were barred by their failure to give notice of breach and to file the suit within the statute of limitations, that the plaintiffs failed to establish that they complied with conditions of the warranty, and that the district court[1] committed reversible error in submitting certain jury instructions and in admitting certain evidence. We affirm the judgment of the district court.
 
 I. FACTS
 
 2
 In 1974, Shatterproof sold 2,004 reflective glass panels to Boain Glass Company, a subcontractor, for installation in a four-story office building owned by The Citadel, Limited (Citadel). The panels were installed into a curtainwall system composed of aluminum framing supplied by Anaconda Aluminum Company (Anaconda).
 
 
 3
 Shortly after completion of the building, a number of the panels began developing moisture accumulation between their panes. In 1977, Shatterproof supplied replacements, pursuant to its warranty, for 14 panels which had developed such problems. The following year, 28 more defective panels were discovered by R.W. Murray Company (Murray), the general contractor for the building. Murray obtained replacements for the 28 panels from Shatterproof and installed them. In 1979, however, Shatterproof disclosed that the panels were not supplied free of charge as per its warranty. Shatterproof then filed suit in state court against Murray, seeking to recover the price of the 28 panels. Murray counterclaimed for breach of warranty, but voluntarily dismissed its claim on May 21, 1981.
 
 
 4
 On July 15, 1981, Citadel and Murray (plaintiffs) sued Shatterproof and Anaconda, alleging breaches of express and implied warranties, negligence, and misrepresentation in connection with the sale of the panels and aluminum framing. The action was dismissed by the district court on Shatterproof's FED.R.CIV.P. 12(b)(6) motion for failure to state a cause of action. 529 F.Supp. 297. The dismissal was reversed by this court as to the causes of action against Shatterproof based on breach of express warranties and on misrepresentation. R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818 (8th Cir.1983) (Shatterproof I).
 
 
 5
 On remand, Shatterproof's motion for a directed verdict at the close of plaintiffs' case was granted as to counts based on a ten-year express warranty and on misrepresentation, but denied as to a count based on a twenty-year express warranty. The twenty-year warranty provided, in pertinent part, as follows:
 
 
 6
 Subject to the conditions below, Shatterproof Glass Corporation warrants its insulating glass units for a period of twenty (20) years from the date of manufacture against defects in material or workmanship that result in moisture accumulation, film formation or dust collection between the interior surfaces resulting from failure of the hermetic seal
 
 
 7
 OUR EXCLUSIVE REMEDY AND THE LIMIT OF OUR LIABILITY UNDER THIS WARRANTY SHALL BE TO FURNISH A REPLACEMENT FOR ANY LITE FAILING TO MEET THE TERMS OF THIS WARRANTY F.O.B. DETROIT TO THE SHIPPING POINT NEAREST THE INSTALLATION
 
 
 8
 IN NO EVENT WILL WE BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR MONEY DAMAGES IN EXCESS OF THE COST OF THE LITE
 
 
 9
 THE FOREGOING IS IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED WHETHER FOR MERCHANTABILITY OR OTHERWISE (Emphasis added.) (Footnotes omitted.)
 
 
 10
 At trial, plaintiffs' experts testified that they had disassembled 39 panels which had evidenced seal failure, conducted a visual inspection of all of the panels, and subjected a sample of visually nondefective panels to a dew-point test. Two hundred and thirty-one panels evidenced moisture accumulation between their panes upon visual inspection and 57% of the panels failed the dew-point test (frost formed inside the panes when subjected to a -40? F temperature, indicating moisture accumulation).
 
 
 11
 The experts testified that the facts established that two-thirds of the panels had experienced seal failure caused by Shatterproof's failure to properly treat or clean the metal spacer bars between the panes of glass (a workmanship defect). The seal failures prevented the necessary adhesion of the butyl sealant to the spacer bars, which permitted moisture accumulation between the panes and resulted in obscured vision. The experts added that, in light of the consistent and extensive nature of the failures which had occurred, it was likely that all of the panels would experience such premature seal failure.
 
 
 12
 Plaintiffs also adduced evidence that neither Shatterproof nor any other supplier could furnish glass with a color tint and reflectivity matching that of the original panels. Plaintiffs submitted that piecemeal replacement of defective glass panels would only worsen the unsightly checkerboard appearance of the building.[2] Their experts testified that, in order to restore the building to a commercially tolerable appearance, complete replacement of all the panels was necessary.
 
 
 13
 The jury found for the plaintiffs, awarding Citadel $1,096,000 and Murray $18,680.50. Citadel's award represents a recovery of $328,600 for 2,004 replacement panels, $671,100 for labor to remove the original panels and install replacement panels, and $96,400 for glazing materials needed for installation of the replacements. Murray's award represents a reimbursement of $10,325 paid to Shatterproof in 1982 for 60 replacement panels and $8,354.50 for labor expenses incurred in installing those panels and the 28 replacement panels supplied in 1979.[3]
 
 II. DISCUSSION
 A. Damage Award
 1. Extent of Breach
 
 14
 Shatterproof contends that plaintiffs failed to make a submissible case of breach of warranty as to all of the panels. The Missouri standard for testing the sufficiency of the evidence is treated as controlling in this diversity action, because "Missouri state standards for testing the sufficiency of the evidence are substantially the same as federal standards," and neither party has raised the issue as to whether the state or federal sufficiency of evidence standards should govern. McIntrye v. Everest & Jennings, Inc., 575 F.2d 155, 158 (8th Cir.1978). See DeWitt v. Brown, 669 F.2d 516, 523 (8th Cir.1982). Under Missouri law,
 
 
 15
 [i]t is well settled * * * that for the purposes of appellate review a plaintiff's verdict (defendant's motion for new trial standing overruled) is final on the fact issues if supported by substantial evidence; and whether plaintiff made a submissible case is determined in the appellate courts by a review of the probative facts not entirely unbelievable or opposed to the physical facts, * * * from the standpoint most favorable to the plaintiff, including facts established by defendant's evidence aiding plaintiff's case when not in conflict with plaintiff's testimony or plaintiff's fundamental theory, giving plaintiff the benefit of all legitimate favorable inferences and disregarding defendant's evidence unfavorable to plaintiff. * * * In the circumstances presented we do not weigh conflicting probative evidence. * * *.
 
 
 16
 Capra v. Phillips Investment Co., 302 S.W.2d 924, 929 (Mo.1957) (en banc) (citations omitted). See also Manley v. Horton, 414 S.W.2d 254, 257 (Mo.1967); Anderson v. Mutert, 619 S.W.2d 941, 946 (Mo.App.1981).
 
 
 17
 We find that the jury's verdict is supported by substantial evidence. First, the evidence establishes that two-thirds of the panels have actually failed and that their failures constitute breaches of Shatterproof's warranty. Second, the evidence supports a finding that the remaining panels will fail within the warranty period and that these failures will also constitute breaches of Shatterproof's warranty. Plaintiffs' experts were not engaging in mere speculation when they opined that all of the panels would fail prematurely. Their opinions were based upon the consistent and extensive nature of the failures which had occurred up to the time of trial. In the circumstances of this case, plaintiffs need not wait for all of the panels to actually fail in order to establish a breach of warranty as to all of the panels.
 
 2. Direct Damages
 
 18
 The trial court's damage instruction directed the jury as follows:
 
 
 19
 If you find in favor of Plaintiffs Citadel and Murray, then you must award plaintiffs:(a) To Citadel such sum as you believe plus the difference between the fair market value of the insulating glass actually installed in the Citadel building when Plaintiff Citadel discovered or should have discovered that it did not conform to defendant's warranty and its fair market value had the insulating glass been as warranted by defendant, and
 
 
 20
 (b) If you find that defendant either failed to replace insulating glass in the Citadel building free of charge within a reasonable time after it received notice that the glass did not conform or is unable to match the color of the glass presently in the Citadel building, to Citadel and to Murray such additional sum as you believe will fairly and justly compensate Plaintiffs Citadel and Murray for any other damage plaintiffs sustained as a direct result of the glass failing to conform.
 
 
 21
 Shatterproof objects to the difference in value damages provided for in section (a) of the damage instruction on two grounds. First, Shatterproof argues that such damages were not recoverable because its warranty limited its liability to replacement of defective panels. Second, Shatterproof contends that the instruction was erroneous in that it directed the jury to measure market value of the panels "when Plaintiff Citadel discovered or should have discovered that it did not conform," rather than "at the time and place of acceptance," as provided for in MO.ANN.STAT. Sec. 400.2-714(2).[4]
 
 
 22
 We find that neither of Shatterproof's objections to section (a) of the damage instruction warrant a reversal for the simple reason that the jury did not apply section (a) in awarding Citadel damages for the defective panels. Instead, the jury awarded Citadel the cost of replacement panels. This measure of damages was appropriate here, as Citadel suffered damages which could only be remedied by replacement of the panels. As such, the "special circumstances [in this case] show [that Citadel suffered] proximate damages of a different amount" than that which is ordinarily recoverable for breach of warranty. MO.ANN.STAT. Sec. 400.2-714(2). The jury's award of the replacement cost of the panels merely compensated Citadel for the proximate damages it actually suffered by reason of Shatterproof's breach of warranty.
 
 3. Consequential Damages
 
 23
 Shatterproof argues that the damages awarded by the jury for the cost of labor and materials to remove the defective panels and install the replacement panels were consequential damages which were not recoverable since their warranty disclaimed liability for such damages. Section (b) of the damage instruction permitted the recovery of consequential damages if the jury found that Shatterproof: "either failed to replace insulating glass in the Citadel building free of charge within a reasonable time after it received notice that the glass did not conform or is unable to match the color of the glass presently in the Citadel building."[5] The instruction was tendered upon the premise that, if either fact were established, Shatterproof's limited and exclusive warranty would have failed of its essential purpose under MO.ANN.STAT. Sec. 400.2-719(2). This section provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter." Id. The issues here are whether plaintiffs established that Shatterproof's limited and exclusive warranty failed of its essential purpose, whether a failure of essential purpose voids a disclaimer of consequential damages, and, if so, whether the damages awarded by the jury were properly recoverable.
 
 
 24
 a. Failure of Essential Purpose
 
 
 25
 The evidence supports jury findings that Shatterproof failed to replace defective panels within a reasonable time and is unable to supply replacement panels which would match the originals. Shatterproof concedes that, after 1979, it refused to supply replacements for failed panels free of charge. Further, at the time it sold replacement panels to plaintiffs, Shatterproof emphasized that it would probably not be able to supply replacements which would match the originals. In fact, the replacements did not match in color and, as plaintiffs' experts testified, the replacements were not commercially tolerable.
 
 
 26
 In Givan v. Mack Truck, Inc., 569 S.W.2d 243 (Mo.App.1978), the court stated that a limited and exclusive warranty to repair or replace "fails of its purpose and is thus avoided under Sec. 400.2-719(2) wherever the warrantor fails to correct the defect within a reasonable period; * * *." Id. at 247. Here, Shatterproof not only failed to replace the defective panels within a reasonable time, but was actually unwilling and unable to supply adequate replacements. Thus, plaintiffs established that Shatterproof's limited and exclusive warranty failed dof its essential purpose under Missouri law.
 
 
 27
 b. Effect on Disclaimer of Consequential Damages
 
 
 28
 The court in Givan discussed the effect of a failure of essential purpose on the damages available to the buyer as follows:
 
 
 29
 Since * * * the limitation of remedy has failed of its essential purpose * * * all other contractual remedies are available. The most commonly applied formula for damages is stated in Sec. 400.2-714(2) which gives the buyer "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted...." * * * Other remedies available include the buyer's incidental and consequential damages resulting from the breach, Sec. 400.2-715.
 
 
 30
 Givan v. Mack Truck, Inc., supra, 569 S.W.2d at 247-48 (emphasis added).
 
 
 31
 The district court concluded that Givan established that consequential damages could be recovered, despite a contractual disclaimer of liability for such damages, when an exclusive or limited remedy fails of it essential purpose.[6] Shatterproof contests this conclusion, arguing that a limitation of liability for consequential damages is valid unless unconscionable under MO. ANN. STAT. Sec. 400.2-719(3). This section provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Id.
 
 
 32
 We generally accord deference to the district court's interpretation of state law. See, e.g., Executive Financial Services, Inc. v. Garrison, 722 F.2d 417, 419 (8th Cir.1983); Mitchell v. City of Minneapolis, 707 F.2d 490, 491 (8th Cir.1983). Here, the district court's construction of Missouri law is both reasonable and permissible.[7] Accordingly, we conclude that consequential damages were recoverable since Shatterproof's limited and exclusive warranty failed of its essential purpose.
 
 
 33
 c. Damages Recoverable
 
 
 34
 Plaintiffs assert that the damages awarded by the jury for the cost of labor and glazing materials to remove defective panels and install replacement panels were recoverable as direct damages under the "special circumstances" language of MO.ANN.STAT. Sec. 400.2-714(2), because such damages flow as a natural consequence of the breach. See, e.g., In Re Barney Schogel, Inc., 12 B.R. 697, 719 (Bankr.S.D.N.Y.1981). Shatterproof, on the other hand, argues that the removal and installation damages were not properly recoverable, because they are consequential damages under MO.ANN.STAT. Sec. 400.2-715(2) and their warranty disclaimed liability for such damages. Since consequential damages were recoverable in this case despite the disclaimer, we need not determine whether the removal and replacement damages were direct or consequential in order to find that such damages were recoverable.
 
 
 35
 The availability of consequential damages also provides an alternative basis for a recovery of damages for panels which had not yet failed as of the time of trial. Due to the "checkerboard" problem caused by Shatterproof's inability to supply commercially tolerable replacements, Citadel suffered damages which could only be remedied by replacement of all the panels. The evidence reveals and common sense shows that Shatterproof had reason to know that Citadel would require panels of a matching reflectivity and color tint. Accordingly, losses caused by Shatterproof's inability to supply adequate replacements were recoverable as consequential damages. See MO.ANN.STAT. Sec. 400.2-715(2).
 
 B. Notice of Breach
 
 36
 Shatterproof asserts that plaintiffs' claims were barred by their failure to give Shatterproof notice of breach as required by MO.ANN.STAT. Sec. 400.2-607(3)(a). This section provides:
 
 
 37
 (3) Where a tender has been accepted
 
 
 38
 (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; * * *.
 
 
 39
 Comment 4 to Sec. 400.2-607(3)(a) gives an indication of the type of notice which must be provided, stating: "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." Id.
 
 
 40
 In March of 1980, Murray formally notified Shatterproof that 28 of the panels were in breach of the warranty. Plaintiffs' concerns regarding the panels had also been made known to Shatterproof prior to this time. In its ruling on Shatterproof's motion for a directed verdict, the trial court held that plaintiffs had given Shatterproof ample notice of breach prior to filing this suit. The jury was instructed on the issue of notice and, by its verdict, implicitly found that adequate notice had been given. We find that the jury could have properly found that the plaintiffs supplied Shatterproof with sufficient notice of breach under the statute.
 
 C. Statute of Limitations
 
 41
 In Shatterproof I, supra, 697 F.2d at 824, we stated: "under section 400.2-725(2) the cause of action on [the express warranty] counts * * * accrued when Murray and The Citadel discovered or should have discovered that the glass panels were defective, * * *." Shatterproof argues that the four-year limitation in MO.ANN.STAT. Sec. 400.2-725(2) bars this suit since Murray had discovered 23 panels[8] evidencing possible seal failure prior to July 15, 1977, and, because of these discoveries, should have discovered that the other panels were defective prior to July 15, 1977.
 
 
 42
 Shatterproof's statute of limitations defense was raised on motions for summary judgment after remand and for directed verdict at close of plaintiffs' case. No instruction on the statute of limitations defense was given to the jury.
 
 
 43
 The trial court denied Shatterproof's motions. The court concluded that discovery of a relatively few defective panels did not require a finding that plaintiffs should have discovered the extensive nature of the panel failures prior to July 15, 1977. The evidence indicated that it was not alarming to discover a small percentage of panels with seal failures. Further, Shatterproof's representatives had advised Murray that one of the means of discovering defective panels--dew-point testing--was costly and unreliable and that there was no way to find out if the windows were defective. Based on this evidence, we are satisfied that the trial court did not err in denying Shatterproof's motions.
 
 D. Conditions of Warranty
 
 44
 Shatterproof contends that plaintiffs failed to establish that they complied with conditions of the warranty that glazing instructions be followed and that the panels be glazed by materials which "completely repel water for the life of the warranty." Shatterproof asserts that noncompliance with these conditions was established by evidence that the system leaked during every rain for at least nine months during installation of the panels.
 
 
 45
 Murray's general manager frequently observed the glazing process and testified that it was performed in accordance with the glazing instructions. Since the system might leak even if the glazing instructions were followed and water repelling materials were used, the jury could have properly found that plaintiffs satisfied these conditions of the warranty.
 
 E. Subsequent Remedial Measures Instruction
 
 46
 Plaintiffs introduced evidence that in 1978 Shatterproof began manufacturing panels which are held together with different materials and by a different method than that used in the panels originally installed in Citadel's office building. The introduction of this evidence was not objected to, but Shatterproof did object to the following instruction:
 
 
 47
 If you find that Shatterproof took measures which, if taken previously, would have made the problems in Shatterproof's insulating glass less likely to occur, then that evidence may be considered in determining whether Shatterproof's insulating glass was defective within the meaning of Shatterproof's expressed warranty.
 
 
 48
 Shatterproof's objection to the above subsequent remedial measures instruction was based upon FED.R.EVID. 407. We have previously determined that Rule 407 does not bar the admission of subsequent remedial measures evidence in actions based on strict liability "since Rule 407 is, by its terms, confined to cases involving negligence or other culpable conduct." Robbins v. Farmers Union Grain Terminal Association, 552 F.2d 788, 793 (8th Cir.1977). See DeLuryea v. Winthrop Laboratories, 697 F.2d 222, 228-29 (8th Cir.1983); Unterburger v. Snow Co., 630 F.2d 599, 603 (8th Cir.1980); Farner v. Paccar, Inc., 562 F.2d 518, 528 (8th Cir.1977).
 
 
 49
 This breach of warranty action is similar to a strict liability action, in that the plaintiffs were not required to establish that Shatterproof was negligent or engaged in culpable conduct in order to establish a breach of Shatterproof's warranty. Accordingly, the instruction did not violate Rule 407. Even if we decided that the evidence was improperly received, in view of the other evidence presented the error was harmless.
 
 
 50
 We note that the instruction may have been objectionable on the basis of relevancy. Shatterproof, however, failed to object to it on this ground. Where error in an instruction is not properly objected to, the error is "waived unless the error is plain error in the sense that a miscarriage of justice would otherwise result." Johnson v. Houser, 704 F.2d 1049, 1051 (8th Cir.1983). We find that any error caused by instructing the jury that they could consider subsequent remedial measures did not amount to plain error.
 
 F. Evidence of Other Failures
 
 51
 Plaintiffs introduced evidence that other panels supplied by Shatterproof for installation in two other office buildings suffered seal failures of the same nature as those which occurred in Citadel's office building. These other buildings were built at approximately the same time as Citadel's office building and, like Citadel's building, were located within the St. Louis area. Further, the glass panels supplied to these buildings were held together by the same method as the panels installed in Citadel's building.
 
 
 52
 Shatterproof objected to the introduction of the evidence on the grounds that it was not relevant, and that, even if it were relevant, its probative value was outweighed by dangers of unfair prejudice, confusion of the jury, and undue delay. See FED.R.EVID. 401 and 403. These objections were overruled after counsel presented their views at a bench conference.
 
 
 53
 Trial judges are granted wide discretion in determining the relevancy and admissibility of evidence. See, e.g., E.I. du Pont de Nemours & Co. v. Berkley and Co., 620 F.2d 1247, 1272 (8th Cir.1980). Here, the plaintiffs submitted evidence of similar failures under substantially similar circumstances. We find no abuse of discretion in the admission of such evidence in this case.
 
 G. Plaintiffs' Allegations of Error
 
 54
 Plaintiffs argue that the district court erred in directing a verdict at close of plaintiffs' case on the ten-year express warranty and the misrepresentation counts. In view of our resolution of this appeal, we need not address these issues, for any error which might exist would be harmless error.
 
 III. CONCLUSION
 
 55
 We affirm.
 
 
 
 [1]
 The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 The appearance of the building, as evidenced in the exhibits, is extremely unsightly and commercially unacceptable
 
 
 [3]
 Shatterproof does not object to the amount of damages awarded to Murray, except as to the award of damages for labor expenses
 
 
 [4]
 This section provides as follows:
 The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
 MO.ANN.STAT. Sec. 400.2-714(2).
 
 
 [5]
 The instruction applied to both Citadel and Murray
 
 
 [6]
 The district court also relied on Oldham's Farm Sausage Co. v. Salco, Inc., 633 S.W.2d 177, 181-83 (Mo.App.1982) and Soo Line Railroad Co. v. Fruehauf Corp., 547 F.2d 1365, 1373 (8th Cir.1977). In Soo Line, this court concluded, in the absence of a controlling state decision, that Minnesota state courts would apply the rule that a failure of essential purpose makes consequential damages available despite a contractual provision barring liability for such damages
 
 
 [7]
 It is true that some courts have held that a disclaimer of consequential damages is effective even though a remedy fails of its essential purpose. See, e.g., Chatlos Systems, Inc. v. National Cash Register Corp., 635 F.2d 1081, 1086 (3d Cir.1980) (New Jersey law); S.M. Wilson & Co. v. Smith International, Inc., 587 F.2d 1363, 1374-76 (9th Cir.1978) (California law). Missouri courts, however, have not adopted this position. See Givan v. Mack Truck, Inc., 569 S.W.2d 243, 247-48 (Mo.App.1978). The decisions in Hibbs v. Jeep Corp., 666 S.W.2d 792, 796-97 (Mo.App.1984) and Oldham's Farm Sausage Co. v. Salco, Inc., 633 S.W.2d 177, 181-83 (Mo.App.1982), relied upon by Shatterproof, are not inconsistent with the decision in Givan. Further, both the language of MO.ANN.STAT. Sec. 400.2-719(2) and Comment 1 to this section support the position established in Givan. See J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, Sec. 12-10 at 469-70 (2d ed. 1980)
 
 
 [8]
 These panels had been replaced and were not at issue in the suit