812 F.Supp. 934 (1993)
John L. MAY, Archbishop of St. Louis, et al., Plaintiffs,
v.
AC & S, INC., et al., Defendants.
No. 88-386 C (5).
United States District Court, E.D. Missouri, E.D.
January 29, 1993.
*935 *936 E. Michael Murphy, Doreen D. Dodson, Katie Walsh, Mike Murphy, St. Louis, MO, C. Alan Runyan, Daniel A. Speights, Speights & Runyan, Hampton, SC, Charles Alan Seigel, The Stolar Partnership, St. Louis, MO, for plaintiffs.
Reed O. Gentry, Douglas N. Ghertner, Field, Gentry & Benjamin, Kansas City, MO, for Basic Inc.
John Mohan, Jeffer Glass, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, St. Louis, MO, for Cleveland Builders Supply Co.
Jan Steinberg, Gerald D. Morris, John S. Sandberg, Ronald L. Vance, Shepherd, Sandberg & Phoenix, St. Louis, MO, for Flintkote Co.
John Marshall, Burns, Marshall & Burns, Clayton, MO, for U.S. Mineral Products Co.
Thomas Walsh, Douglas King, Dennis O'Connell, Bryan Cave, St. Louis, MO, for W.R. Grace & Co.
Charles Dorkey, III, Haythe & Curley, New York City, Jim Shoemake, Francis Slay, Guilfoil, Petzall & Shoemake, St. Louis, MO, for T & N.
Spencer J. Brown, Keith A. Cary, Deacy & Deacy, Kansas City, MO, Ed Cohen, Lawrence Friedman, Donald J. Stohr, Thompson & Mitchell, St. Louis, MO, for U.S. Gypsum Co.
David B. Larson, Watson Ess Marshall & Enggbar, Kansas City, MO, Andrew B. Leonard, Buechner McCarthy Leonard Kaummerer Owen & Laderman, Chesterfield, MO, for Raymark Industries, Inc.
Lisa Salazar, Hoyle Morris & Kerr, Philadelphia, PA, Thomas A. Ryan, Thomas J. Wheatley, Lathrop Koontz & Norquist, Kansas City, MO, for Nat. Gypsum Corp.
James J. Virtel, Richard A. Oertli, John F. Cowling, Armstrong Teasdale Schlafly Davis & Dicus, St. Louis, MO, for Celotex Corp.
*937 Charles E. Gray, Paul C. Hetterman, Joan M. Tanner, Gray & Ritter, St. Louis, MO, Kirk T. Hatley, Patrick Lamb, Katten, Muchin & Zavis, Chicago, IL, for GAF Corp.
John H. Marshall, Burns Marshall Burns & Hobbs, St. Louis, MO, for U.S. Mineral Products Co.
John J. Mohan, Jeffrey R. Glass, Hinshaw Culbertson Moelmann Hoban & Fuller, St. Louis, MO, for The Cleveland Builders Supply Co.
Charles D. Sindel, Sindel & Sindel, Clayton, MO, C. Brooks Wood, Daniel P. Wheeler, Kristine Kraft, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for Keene Corp.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court on the defendants' joint motion for summary judgment (on all remaining counts) regarding statutes of limitations[1], filed December 11, 1992. Plaintiffs filed a responsive pleading on January 7, 1993.
Defendants assert that plaintiffs' claims for strict liability, negligence, implied warranty, express warranty, fraud, and civil conspiracy are all time-barred under the applicable Missouri statutes of limitations. Plaintiffs[2] counter-argument is two-fold: 1) that the Archdiocese's membership in a class action suit filed in 1983 tolled all applicable statutes of limitation; and 2) even if the class action suit did not toll the running of the applicable statutes of limitation, numerous issues of material fact regarding the accrual of the claims precludes the granting of summary judgment based upon the expiration of the applicable time-periods to file suit.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 *938 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).
Where a motion for summary judgment raises the issue of statute of limitations and involves the determination of when a cause of action accrued, "summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determinations can be made as a matter of law." Hildebrandt v. Allied Corp., 839 F.2d 396, 399 (8th Cir. 1987), citing Lundy v. Union Carbide Corp., 695 F.2d 394, 398 (9th Cir.1982).
The plaintiffs argue that before the Court can consider defendants' points as to the various statutes of limitations, the issue of the tolling of the applicable limitation periods by virtue of the plaintiffs' membership in a class action suit must first be examined. The Court agrees.
There is no dispute that on January 17, 1983 a class action suit was brought by four school districts on behalf of all public school districts and private schools in the United States to recover the costs incurred in undertaking asbestos abatement projects. The defendants in this class action suit were, during the relevant time-period, the primary producers and suppliers of raw asbestos and friable asbestos construction and insulation products marketed to public and private schools in the nation. The case is commonly referred to as In re Asbestos School Litigation, 104 F.R.D. 422 (E.D.Pa. 1984), modified, 107 F.R.D. 215 (E.D.Pa. 1985), aff'd in part and vacated in part, 789 F.2d 996 (3rd Cir.), cert. denied, 479 U.S. 852, 915, 107 S.Ct. 182, 318, 93 L.Ed.2d 117, 291 (1986). There is also no dispute that plaintiffs were members of the plaintiff class and properly opted out of this class action suit on February 28, 1988 and immediately filed the present cause of action.
Defendants contend that membership in the Asbestos School Litigation class action suit did not toll the running of the applicable Missouri statutes of limitations. Defendants argue that the Supreme Court cases (cited by the plaintiffs) addressing the issue of the effect of class membership on the running of a statute of limitations are inapplicable because they only address federal statutes of limitations. Defendants cite other Supreme Court cases which they contend stand for the proposition that regardless of class membership, the federal courts must apply the applicable state statute of limitations and tolling rules. Chardon v. Fumero Soto, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Finally, the defendants contend that Missouri's saving statute, § 516.230 R.S.Mo. (1986), fails to toll the statutes of limitations.
After a thorough reading of the relevant caselaw, this Court finds that plaintiffs' membership in the Asbestos School Litigation class action suit did toll the running of the applicable statutes of limitations until such time that plaintiffs opted out of the class. Since defendants' motion and memorandum in support focuses upon the time period of March 1979-January 1983, the Court assumes that defendants believe March 1979 to be the earliest point at which plaintiff's claims accrued.[3] Consequently, plaintiffs' action was timely filed if their claims accrued on or after January 16, 1978.[4]
*939 In a trilogy of cases, the United States Supreme Court has clearly embraced the principle that the filing of a class action tolls the applicable statute of limitations for all class members, whether or not the class member ultimately opts out of the class. Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-53, 103 S.Ct. 2392, 2396-97, 76 L.Ed.2d 628 (1983); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 2152, n. 13, 40 L.Ed.2d 732 (1974); American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Not one of these cases limited its holding to federal statutes of limitations. Even assuming arguendo, that the holdings in these cases were limited to federal statutes of limitations, Missouri has adopted the principle set down in these cases. In Hyatt Corp. v. Occidental Fire & Casualty Co., 801 S.W.2d 382 (Mo.App. 1990) (the infamous Hyatt Regency skywalks collapse of July 17, 1981), the Missouri Court of Appeals held that the filing of a class action complaint (referred to as the Jacobs complaint) on behalf of all rescuers (except policemen and firemen) tolled the applicable Missouri statute of limitations for all putative rescuers, including those who subsequently filed their own actions or settled their claims during the pendency of the Jacob class action. Id., at 389. Not only did the Missouri Court of Appeals adopt the principle that filing a class action suit tolls the applicable statute of limitations (in that case a Missouri statute of limitations) for the class members, the Court specifically cited American Pipe, supra; Eisen v. Carlisle & Jacquelin, supra; Crown, Cork & Seal, supra in support of its holding.
Furthermore, other courts have held that membership in the Asbestos School Litigation class action tolls the applicable state statute of limitations. See, Independent School District No. 197 v. W.R. Grace & Co., 752 F.Supp. 286, 291 (D.Minn.1990); West Haven School District v. Owens-Corning Fiberglas Corp., 721 F.Supp. 1547, 1555 (D.Conn.1988); contra Oconomowoc Area School District v. U.S. Gypsum Co., Cause No. 86-CV-5939 (Wisc. Circuit Court, Dane County) (December 17, 1992).
Defendants' cited United States Supreme Court cases in support of their motion are not applicable to the present situation. Both cases concern the applicability of a state statute of limitations and tolling statute to a § 1983 action. Crucial to these cases was the Supreme Court's holding that pursuant to 42 U.S.C. § 1988, federal courts must "borrow" the analogous state statute of limitations and coordinate tolling rules in § 1983 actions because § 1983 does not contain its own federal statute of limitations. This policy of "borrowing" must be adhered to even if the individual action was delayed due to a pending class action suit. Chardon, supra; Tomanio, supra. These two cases do not limit tolling of statutes of limitations due to class membership only to federal statutes of limitations nor do they require the federal court to use state statutes of limitations and tolling statutes in federal diversity cases.
The defendants' arguments regarding the Missouri savings statute and the non-school counts not being tolled because they were never part of the Asbestos School Litigation class action claims are equally meritless. The Missouri savings statute, § 516.230 R.S.Mo., is not relevant to the instant cause of action because there was never a nonsuit situation present in this case. As to the non-school counts, the Court cannot distinguish school buildings claims from non-school buildings claims in the complaint central to the class action suit. The defendants provide no caselaw to support their contention that a specificity of claims is significant to the application of the principle that filing a class action tolls the pertinent statute of limitations for all class members. It appears that in the instant *940 matter, the distinction between school buildings and non-school buildings is simply for administrative purposes in categorizing the original 1000 buildings involved and the evidence germane to the buildings.
Since the Court finds that plaintiffs' membership in the Asbestos School Litigation class action suit tolled the applicable Missouri statutes of limitations from January 17, 1983 to February 29, 1988, the next question is whether plaintiffs' claims are still barred.[5]
Contrary to the defendants' assertions, plaintiffs' lawsuit is one based upon asbestos contamination in its buildings. Plaintiffs seek to recover from the defendants the cost of abating the health hazards posed by certain asbestos-containing materials which were present in plaintiffs' buildings and which were allegedly manufactured by the defendants. Plaintiffs' complaint sets forth several legal theories of liability: strict liability, negligence, civil conspiracy, implied warranty, express warranty, and fraudulent misrepresentation.
Under Missouri law, a cause of action accrues and the limitations period begins running when the right to sue on the action arises. Corley v. Jacobs, 820 S.W.2d 668, 672 (Mo.App.1991); Schwartz v. Lawson, 797 S.W.2d 828, 832 (Mo.App.1990). Thus, the period of limitations commences when the injury sustained is a legal injury. An injury becomes a legal injury, i.e. compensable, and under § 516.100 R.S.Mo. the limitations begin to run "... when the damage resulting therefrom is sustained and is capable of ascertainment ...".[6]
The defendants contend that plaintiffs' claims accrued when they knew about the potential health hazards of asbestos. They aver that the plaintiffs were "bombarded" with Government documents, scientific and medical literature, newspaper articles, newscasts, etc. between 1979-1982 regarding the asbestos hazard in schools. They further aver that plaintiffs even took steps to inspect, analyze, consult with experts, and abate asbestos in some buildings between 1979 and 1982. Consequently, the defendants argue that the plaintiffs had all the information they needed to ascertain that the asbestos-containing materials in the Archdiocese buildings, upon foreseeable use, could create potential health hazards as early as 1979.
Plaintiffs, on the other hand, argue that since their cause of action is for asbestos contamination, it did not accrue until such time the buildings were contaminated and the plaintiffs could ascertain that such contamination posed a substantial and unreasonable risk of harm. They insist that numerous genuine issues of material fact exist as to 1) whether the plaintiffs' buildings were contaminated; 2) if so, when the buildings were contaminated; 3) what extent the buildings were contaminated; and 4) assuming arguendo that the buildings were contaminated prior to March 1, 1983, did sufficient information exist for plaintiffs to ascertain that such contamination posed a substantial and unreasonable risk of harm (as a matter of law).

Tort Claims (strict liability, negligence, and conspiracy)
The applicable statute of limitations for these claims is § 516.120 R.S.Mo. The limitations period is five years from the accrual of the cause of action.
As previously noted, the defendants contend that plaintiffs' tort claims accrued as early as March 1979 and most certainly by March 1982 due to the amount of information available to the plaintiffs concerning the potential health risks of asbestos-containing materials in schools. Plaintiffs contend that they could not maintain a legal action for asbestos contamination to a successful result until such time it could be *941 ascertained that the buildings were contaminated and that such contamination posed a substantial and unreasonable health risk. They argue that they could not have ascertained whether the buildings were contaminated and posed such a serious health risk prior to March 1, 1983 because all of the literature and information available from government sources and the science and medical community did not establish a "contamination" or "unreasonable risk" level until several years later. They point out that the information available noted the uncertainties of low level exposure, and that even to this day, the defendants minimize or deny the health concerns raised a decade ago.
Missouri law appears to be unsettled regarding accrual of a cause of action for asbestos contamination. In School District of the City of Independence, Missouri v. U.S. Gypsum, 750 S.W.2d 442 (Mo.App.1988), the Court of Appeals held that tort liability could extend to an asbestos manufacturer "whose product threatens a substantial and unreasonable risk of harm by releasing toxic substances into the environment, thereby causing damage to the property owner who has placed the harmful product in the building." Id., at 457. Under Independence, supra, physical contamination from asbestos fiber release and a substantial and unreasonable risk of harm are crucial elements to an asbestos contamination cause of action. Following the Independence decision, the Missouri Court of Appeals then addressed the issue of the running of the statute of limitations for negligence and/or strict liability claims in an asbestos abatement case similar to the present one. In Kansas City v. W.R. Grace & Co., et al., 778 S.W.2d 264 (Mo. App.1989) (commonly referred to as Kansas City I), the defendants sought summary judgment on strict liability, negligence, warranty, conspiracy, and fraud claims averring that the claims were not timely-filed under the applicable Missouri statutes of limitations. The complaint had been filed in August 1986, and defendants claimed that the plaintiff possessed the knowledge required to ascertain that asbestos-containing materials in the Kansas City airports could possibly create potential health hazards prior to August 1981. The Court held that in order for a cause of action in tort for asbestos contamination to accrue, release of toxic asbestos fibers into the environment is necessary, together with the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers. Id., at 268. After addressing many of the same points raised by the defendants (as in this case), the Court of Appeals reversed the trial court's granting of summary judgment on statute of limitations grounds. The Court found that issues of fact existed as to when the buildings were contaminated and when the plaintiff could have first ascertained that fact and the resulting damage. Id., at 269-271. With regard to the wealth of scientific knowledge available to plaintiff, the Court found that there were genuine issues of material fact as to when it was scientifically established that exposure to asbestos fibers, to any degree, presented a substantial and unreasonable risk of harm. Id., at 270. The Court noted that it was not until 1983 that the Occupational Safety and Health Administration (OSHA) unequivocally reported "that there was no level of exposure to asbestos below which clinical effects did not occur".[7] The Court then pointed out that uncertainty still existed because "there were those in the asbestos industry who took issue with OSHA on this point." Id., at 270. Applying the same reasoning, the Court analyzed the statutes of limitations regarding the fraud and warranty claims, and concluded that issues of fact also existed regarding these claims. Consequently, the Court reversed the granting of summary judgment *942 on these claims to defendants. Id., at 271-273. The case was then remanded to the trial court for further proceedings.
The case went to trial and the jury returned a $14,250,000.00 verdict for the plaintiff. In post-trial proceedings, the trial court granted a judgment notwithstanding the verdict in favor of defendant Keene on the punitive damages award of approximately $6,250,000.00. The parties appealed and the Court of Appeals once again addressed the issue of the applicable Missouri statutes of limitations barring the plaintiff's claims. In Kansas City v. W.R. Grace & Co., et al., 1992 WL 202510 (Mo. App.1992) (filed August 25, 1992) (commonly referred to as Kansas City II), a different panel of the Missouri Court of Appeals viewed plaintiff's cause of action differently than the panel did in Kansas City I.
In Kansas City II, the Court of Appeals did not view the action as one for asbestos contamination but rather as one for potential health hazards; i.e., the presence of asbestos damaged the buildings because future renovations or repairs might release the asbestos fibers. Kansas City II, supra. The Court held that plaintiff possessed enough information beginning in 1972 to conclude that the asbestos-containing materials in the buildings posed a potential health risk upon release of asbestos fibers during renovation or repair work. Kansas City II, supra. The Court held that the tort claims, fraud claims, and warranty claims were all time-barred under the applicable Missouri statutes of limitations. Kansas City II, supra.
Plaintiff's application for transfer to the Missouri Supreme Court was granted. This Court has been informed by the Clerk of the Missouri Supreme Court that arguments in Kansas City II will not be heard until sometime in late February or March, 1993.
One other federal district court in Missouri has considered the issue of when the statute of limitations begins to run on an asbestos property damage action. In Columbia Public School District v. U.S. Gypsum, et al., Cause No. 87-4366-CV-W-5, Slip Opinion, filed May 1, 1989, 1989 WL 87086, the Honorable Scott O. Wright considered a school asbestos contamination case based upon claims similar to the ones in the present action. The defendants filed motions to dismiss and summary judgment motions raising the same arguments present in the instant case. Judge Wright clearly held that a cause of action in an asbestos property damage case accrues upon contamination and such contamination posing a substantial and unreasonable risk of harm. Columbia Public School District, slip op. at 6. Finding that numerous issues of fact existed as to when the buildings were contaminated and posed a substantial and unreasonable risk, Judge Wright denied all of the motions. Columbia Public School District, slip opinion, supra.
Plaintiffs' strict liability and negligence claims are based upon their assertion that defendants' asbestos-containing products contaminated its buildings with asbestos fibers and that such contamination posed a substantial and unreasonable health risk necessitating abatement action. Defendants have not presented clear and convincing evidence that plaintiffs' buildings were contaminated prior to March 1, 1983, and/or if such contamination existed, that plaintiffs could ascertain a substantial and unreasonable health risk due to such contamination. The Court agrees that a plethora of information was circulated during the late 1970s and early 1980s concerning asbestos and certain health risks associated with it. However, the information was speculative as to the exact nature of the health risks and the level at which exposure became potentially life-threatening. The first significant governmental warning came in 1983 from OSHA, yet this too contained a disclaimer as to the level of danger from exposure. Meanwhile, the defendants continuously defended the safety of their products from this "alarmist attitude fostered by EPA in 1979 through 1982." Defendants' Memorandum in Support of their joint Motion for Summary Judgment, filed December 11, 1992, pg. 9 n. 6. Abatement action was not governmentally required due to wide-spread belief that there was no safe level of exposure *943 until 1986 when Congress passed the Asbestos Hazard Emergency Response Act (AHERA), 15 U.S.C. § 2641 et seq. (1987). Thus, despite the abundance of asbestos information regarding asbestos available between 1979 and 1982, uncertainties of the dangers posed by asbestos-containing materials in buildings prevailed.
Finally, the defendants' evidence as to contamination of the plaintiffs' buildings focuses upon only eight (8) out of over one hundred (100) buildings still at issue. The evidence presented regarding these eight buildings indicates that there were general concerns about asbestos which upon investigation, in some cases, were dismissed by the expert consultants. There is no evidence presented regarding the purported contamination for the other ninety (90) or more buildings.
As to the conspiracy counts, the Court notes that defendants seek to bar plaintiffs' conspiracy claims, yet present absolutely no evidence to support their contention that these claims are also untimely. Not a single page of defendants' memorandum in support is devoted to plaintiffs' conspiracy claims, although the motion for summary judgment seeks dismissal of these claims. Furthermore, defendants are in error in their belief that the same accrual standard for the strict liability and negligence claims holds also for civil conspiracy claims. Defendants' Memorandum in Support of their joint Motion for Summary Judgment, filed December 11, 1992, pg. 32 n. 13. Even if the Court were to accept defendants' accrual standard for strict liability and/or negligence as the point in time when the plaintiffs possessed sufficient information advising them that in-place asbestos-containing materials could possibly create potential health hazards, this accrual standard is inapplicable to civil conspiracy. A conspiracy cause of action is governed by the five year statute of limitations of § 516.120 R.S.Mo. The five year limitations period begins running upon the occurrence of the last overt act charged resulting in damage to the plaintiffs. Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984); Kansas City I, at 273-74. Defendants fail to present any evidence regarding when the last overt act took place resulting in damage to the plaintiffs.
The plaintiffs contend that the defendants conspired to misrepresent the safety of their products and to withhold vital information regarding health hazards associated with asbestos. Defendants have failed to set forth any undisputed affirmative facts demonstrating that the last overt act taken by the defendants in furtherance of the alleged conspiracy took place prior to March 1, 1983.
The evidence so far on the record illustrates that numerous issue of fact are disputed by the parties regarding when plaintiffs' buildings were contaminated, the extent of the contamination, and when the plaintiffs' were in a position to ascertain that such contamination posed a substantial and unreasonable risk of harm. Furthermore, factual disputes exist as to the nature of the defendants' alleged conspiracy, thereby raising questions as to when the last overt act of the alleged conspiracy took place.
The only material fact no longer in dispute is that the plaintiffs' membership in the class action suit tolled the statute of limitations for its torts claim from 1983 to 1988. If plaintiffs' cause of action for their tort claims arose on or after January 16, 1978, then plaintiffs tort actions were timely-filed; if plaintiffs' cause of action for their tort claims arose earlier than January 16, 1978, then their tort claims are barred. However, since the afore-mentioned material facts remain in dispute, the granting of summary judgment, as to the tort claims, is inappropriate.

Warranty Claims
Defendants contend that plaintiffs' warranty claims which allegedly accrued prior to July 1, 1965 are not timely filed because, pursuant to the five year limitations period of § 516.120 R.S.Mo., such actions must have been filed by June 30, 1970. They further contend that plaintiffs' warranty claims, both implied and express, which allegedly accrued after July 1, 1965 are not timely filed because, pursuant to the four *944 year limitations period set out in Missouri Commercial Code § 400.2-725(2), such actions must be filed within four years of the date the product was delivered. Since plaintiffs contend that defendants' products were installed in their buildings from 1934 to 1972, defendants argue that the four year limitations period expired in 1976.
Under Missouri law, warranty claims fall under two separate limitations periods depending upon when the commercial transactions giving rise to the warranty claim took place. The divisional date is July 1, 1965. For transactions occurring prior to July 1, 1965, the five year limitations period set out in § 516.120 is applicable. For transactions occurring after July 1, 1965, the limitations period pursuant to § 400.2-725(2) is four years from date of delivery. However, § 400.2-725(2) extends the limitations period to five years if the warranty extended to future performance. In the case of a warranty for future performance, the cause of action accrues upon discovery of the breach and not from the date of delivery.
Defendants contend that plaintiffs' implied warranty claims cannot fall under the extension provision of § 400.2-725(2) because implied warranties, by their very nature, do not "explicitly" extend to future performance. Defendants assert this argument without benefit of any supporting caselaw. Plaintiffs fail to address this specific issue, instead choosing to group their implied and express warranty claims collectively.
Under Missouri law, a warranty action, for claims after July 1, 1965, must be commenced within four years of the date of delivery of the product unless the product was sold with a warranty for future performance, in which case, the statute of limitations begins from the date on which the defect was or should have been discovered. § 400.2-725(1) and (2).
A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
§ 400.2-725(2) (emphasis added).
In R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818 (8th Cir.1983), the Eighth Circuit Court of Appeals reviewed the current Missouri law regarding a warranty of future performance under § 400.2-725(2) and concluded that "... in order to constitute a warranty of future performance under section 400.2-725(2), the terms of the warranty must unambiguously indicate that the manufacturer is warranting the future performance of the goods for a specified period of time." Id., at 823.
By its very nature, an implied warranty of merchantability does not warrant future performance of a product. An implied warranty is not based upon a clear expression by the manufacturer/seller that unambiguously warrants the future performance of the goods. The plaintiffs' offer no evidence or facts to indicate otherwise. Plaintiffs' claims for implied warranties are governed by the five-year limitations period under § 516.120 for claims accrued prior to July 1, 1965 and the four-year limitations period (from date of delivery) under § 400.2-725(2) for claims accrued after July 1, 1965. Defendants argue that the plaintiffs' pre-Code implied warranty claims had to accrue prior to July 1, 1965 in order to invoke § 516.120 R.S.Mo.; therefore all pre-Code implied warranty claims expired as of June 30, 1965. They further argue that since the parties agree that the last installation date was in 1972, then all post-Code implied warranty claims were barred effective 1976.
The Court agrees. It is clear that in order for the plaintiffs to take advantage of the five year limitations period of § 516.120, their pre-Code implied warranty claims had to accrue prior to July 1, 1965. § 400.2-725(4). Consequently, the latest date that plaintiffs could file on their pre-Code implied warranty claims was June 30, *945 1970. As for the post-Code implied warranty claims, the four year limitations period expired in 1976. Plaintiffs' implied warranty claims are untimely and summary judgment will be granted for the defendants as to these counts.
As for the express warranty claims, plaintiffs argue that certain representations made by the defendants as to the quality and workmanship of their asbestos-containing products constitute warranties for future performance and therefore the limitations period begins upon the discovery of the breach. Representations made by the defendants, similar to ones in other asbestos contamination cases, have been held to be warranties for future performance. See, Kansas City I, supra, at 272, Columbia Public School District, supra, at pg. 7. However, these opinions fail to address Missouri substantive law on the issue of what constitutes an express warranty of future performance.
In R. W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818 (8th Cir.1983), appeal after remand, 758 F.2d 266 (8th Cir.1985), the Eighth Circuit Court of Appeals examined Missouri law as to the standards to be applied in determining whether a warranty explicitly extends to future performance. Id., 697 F.2d at 822, citing Binkley v. Teledyne Mid-America Corp., 333 F.Supp. 1183 (E.D.Mo.1971), aff'd, 460 F.2d 276 (8th Cir.1972). The Court held that for a warranty to extend to future performance, it "must unambiguously indicate that the manufacturer is warranting the future performance of the good for a specified period of time." Id., 697 F.2d at 823 (emphasis added). Missouri courts have implicitly adopted the R. W. Murray v. Shatterproof Glass definition and application of a warranty for future performance. See, Black Leaf Products Co. v. Chemsico, 678 S.W.2d 827, 830 (Mo.App.1984); Wilbur Waggoner Equipment and Excavating Co. v. Clark Equipment Co., 668 S.W.2d 601, 602 (Mo.App.1984). Although the plaintiffs cite Black Leaf Products in support of their contention that representations (that make no mention of a specified time period) that a product is free from defect in quality or workmanship is a warranty for future performance, they fail to note that an important fact in the case is that the warranty was for two years against defects in quality or workmanship. Black Leaf Products, at 829.
The Court finds that under Missouri law, a warranty for future performance must specify a particular period of time. Since the alleged (mis)representations of the defendants did not contain this element, it is the Court's considered opinion that any express warranties made by the defendants can not be construed as extending to future performance. Therefore, plaintiffs' express warranty claims, pre-Code and post-Code, are barred for the same reasons that the implied warranty claims are barred. Summary judgment will be granted for the defendants as to the express warranty counts.

Fraud Claims
Plaintiffs allege that defendants fraudulently represented that their products were safe, non-toxic, and ideal for use in the plaintiffs' buildings. The parties differ greatly as to when the fraud claims accrued. Plaintiffs contend that their cause of action accrued when contamination occurred; an issue of material fact which is disputed. In the alternative, plaintiffs contend that the summary judgment motion must be denied because defendants have failed to present any evidence that plaintiffs did or could have discovered defendants' intentional misrepresentations regarding the safety of their products prior to March 1, 1983. Defendants contend that the fraud occurred at the time the defendants' products were delivered and since the last date of installation is averred to be 1972, plaintiffs' claims are time-barred under the ten-year period for discovery of the fraud and the five-year limitations period for filing suit.
The statute of limitations for fraud is five years and the cause of action is "deemed not to have accrued until discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." § 516.120(5) R.S.Mo. (1978). *946 Unlike the accrual provisions of § 516.100, a claim for fraud accrues, not when the resulting damage is capable of ascertainment, but rather when the facts constituting the fraud are discovered. Missouri courts have construed § 516.120(5) to mean that ten (10) years are provided for the discovery of the facts constituting the fraud, and that an action for fraud must be commenced within five (5) years of discovery, but if the fraud is not discovered within ten (10) years, the cause of action is deemed to accrue nevertheless at the end of this ten-year period, and the plaintiff has an additional five years to file his/her action. In any event, an action for fraud is barred after fifteen (15) years of the commission of the fraud. Kansas City II, slip op. at pgs. 20-22; Schwartz v. Lawson, at 832; Kansas City I, at 273; Columbia Public School District, slip op. at pg. 8. Furthermore, the intent of § 516.120(5) is to encourage a plaintiff to act with due diligence to discover "the facts constituting the fraud." Kansas City II, slip op. at pg. 21; Schwartz v. Lawson, at 832. "Where the means for discovery exist, a plaintiff is deemed to know of the fraud, so that the period of limitations commences to run then." Schwartz v. Lawson, at 832.
Defendants contend that plaintiffs knew or should have known, through their own inspection efforts and scientific/medical information disseminated to the public, prior to March 1, 1983 that the alleged fraud had occurred. They further contend that since the latest installation of any of the asbestos-containing materials was in 1972, the fifteen (15) year maximum for filing suit under § 516.120(5) expired in 1987.
If it weren't for the tolling of the statute of limitations for the years 1983 to 1988, defendants would be correct in their contention that the fraud claims are time-barred. However, since the limitations period was tolled by membership in the class action suit, plaintiffs' fraud claims are not barred. Plaintiffs had until 1982 to discover the facts constituting the fraud. Regardless of whether or not they discovered the facts within this time period, the limitations period commenced in 1982. Since the limitations period was tolled from 1983 to 1988, plaintiffs used only one year of the limitations period. Once they opted out of the class, plaintiffs still had four more years to file suit on their fraud claims. Plaintiffs' fraud claim would not expire, pursuant to § 516.120(5), until 1992. Summary judgment will not be granted on the fraud counts as untimely.

Fraudulent Tolling
Under Missouri law, statutes of limitations may be tolled by the improper acts of a defendant intended to conceal the existence of a plaintiff's cause of action. § 516.280 R.S.Mo. (1978). In the present case, plaintiffs have alleged that defendants misrepresented the harmful nature of their products, failed to fully disclose the extent of the risk to health, and continue to conceal health hazards associated with their products from the plaintiffs. Defendants have argued that plaintiffs' claims are all time-barred because plaintiffs had information sufficient to educate themselves as to the health risks associated with asbestos and asbestos-containing materials prior to March 1, 1983. Yet, their pleadings and discovery responses contradict the arguments advanced in their summary judgment motion. The record indicates that defendants claim the information available 10-20 years ago reflected an "alarmist" attitude, was scientifically and medically unreliable, and (even to this day) that their products are safe. Given the posture of the parties' positions, it is clear that genuine issues of material fact, as reflected in the current record, exist as to whether the defendants attempted to conceal the facts necessary to give rise to the claims asserted, and despite the alleged fraudulent concealment, whether plaintiffs had actual or constructive knowledge of the facts giving rise to the plaintiffs' claims for relief. Under these circumstances, summary judgment is inappropriate since an issue of fact remains as to whether the statutes of limitations for the tort claims are tolled by the alleged improper acts of the defendants. § 516.300 R.S.Mo. (fraudulent concealment tolling statute is applicable only to the statutes of limitations contained in Chapter 500); Kueneke *947 v. Jeggle, 658 S.W.2d 516, 518-19 (Mo. App.1983), citing Anderson v. Dyer, 456 S.W.2d 808, 813 (Mo.App.1970) (§ 516.280 does not apply to toll the statute of limitations for fraud).
Based upon the foregoing reasons, defendants' joint motion for summary judgment on statutes of limitations will be denied as to plaintiffs' counts for strict liability, negligence, civil conspiracy, and fraud. Defendants' joint motion for summary judgment on statutes of limitations will be granted as to plaintiffs' counts for implied warranty and express warranty.

ORDER
In accordance with the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendants' joint motion for summary judgment on statutes of limitations, filed December 11, 1992, be and is GRANTED in part and DENIED in part as set forth in the attached memorandum.
IT IS FINALLY ORDERED that Counts II, III, XIV, and XV (implied warranty and express warranty) are hereby DISMISSED as being barred by the applicable Missouri statute of limitations.
NOTES
[1] Due to the settlement reached with the thermal insulation and floor tile defendants, the only remaining viable counts are I through VI and XIII through XVIII. The Court also notes that on January 11, 1993 it was informed that defendants Keene Corp. and Turner & Newall, Ltd. had reached a settlement with the plaintiffs. Consequently, the instant motion only concerns Counts I through VI and XIII through XVIII, as well as defendants U.S. Gypsum, W.R. Grace, Cleveland Builders Supply, and U.S. Mineral Products only.
[2] Although the action is technically brought by several plaintiffs having an ownership interest in the subject buildings, the parties appear to agree that all buildings fall under the control of the Archdiocese of St. Louis and thus, Archbishop May as the spiritual leader for the Archdiocese. Consequently, the pleadings and evidence speak mainly to the actions and knowledge of the Archbishop and employees of the Archdiocese.
[3] In its recently filed reply brief, defendants aver that plaintiffs had access to information regarding the health risks associated with asbestos as early as 1976 through media reports; however the Court finds that a reading of the defendants' pleadings on this matter generally focus on the years 1979-1983.
[4] This date is based upon the apparent agreement among the parties that the applicable Missouri statutes of limitations are as follows: tort claims  § 516.120 (five years); warranty claims  § 400.2-725 (four years or five years for post 7/1/65 claims) and § 516.120 (five years for pre 7/1/65 claims); and fraud claims  § 516.120(5) (five to fifteen years depending upon when the alleged fraud is discovered). What is greatly disputed is the standard by which to adjudge the accrual of the claims under these various statutes of limitations.
[5] Defendants memorandum in support of their motion for summary judgment on statutes of limitations, as well as their reply brief, present arguments based upon their belief that the years 1983 to 1988 were not tolled by membership in the class action suit. They do not present any arguments to support their belief that the claims are untimely given the tolling of the applicable statutes of limitations from the years 1983 to 1988.
[6] However, this principle is not applicable to a cause of action for breach of warranty or fraud.
[7] In its reply brief, the defendants claim that the OSHA statement referred to by the appellate court in Kansas City I was published in 1983 but actually was first made in a joint NIOSH/OSHA asbestos work group report in 1980. However, there is no evidence that this NIOSH/OSHA work group report was ever widely circulated or released to the general public. Consequently, the published OSHA report of 1983 appears to be the first public pronouncement by the OSHA of the health risks associated with asbestos.